RICHARD V. SYAS, APPELLANT, V.
NEBRASKA METHODIST HOSPITAL FOUNDATION,
A CORPORATION, APPELLEE.

307 N.W.2d 112

Filed June 19, 1981.   No. 43374.

Charles I. Scudder for appellant.

Ronald H. Stave and Joseph S. Daly of Sodoro, Johnson, Daly, Stave, Cavel & Coffey for appellee.

Heard before KRIVOSHA, C.J., McCOWN, WHITE, and HASTINGS, JJ., and MORAN, District Judge.

MORAN, District Judge.

This is appeal from a directed verdict for the defendant, Nebraska Methodist Hospital Foundation (hospital), after the plaintiff, Richard V. Syas (Syas), presented his evidence in a slip-and-fall case. The trial judge determined that Syas was guilty of contributory negligence to a degree sufficient to bar his right to recover from the hospital. We affirm.

As we must, we assume the truth of the material and relevant evidence presented by Syas, find every

controverted fact in his favor, and give him the benefit of every reasonable inference deducible from the evidence. *Crawford v. Soennichsen*, 175 Neb. 87, 120 N.W.2d 578 (1963).

On March 6, 1978, Syas drove from his home in Hancock, Iowa, to the hospital in Omaha, Nebraska, to pick up his teenage daughter who was to be released from the hospital that day after surgery performed the previous week. There was snow on the ground all the way. He arrived about 11 a.m. and parked his automobile in the hospital's parking lot where snow had been moved into piles. He entered the hospital and made arrangements for his daughter's discharge. He was told to bring his car to the second level entrance where hospital personnel would bring her. He returned to his car and drove up a private road to the second level. He had never used this road before. The lane nearest the entrance was a fire lane in which parking was prohibited, but was used as a pickup and dropoff area. There were parked cars in this lane, and there was evidence that this was a chronic situation which the hospital had not remedied. Syas stopped in the second lane opposite the entrance. The area was protected by a permanent canopy, and the pavement in that area contained an electrical heating system designed to prevent icing of water tracked onto the pavement by automobiles and melting snow which might blow onto the roadway under the canopy. The day was cold and windy. Climatological data showed air temperature at Eppley Airfield near Omaha on March 6, 1978, was 27 degrees at 9 a.m. and 33 degrees at noon. Syas testified that as he drove up the rampway everything looked normal. He saw no broken pieces of concrete, or chuckholes. He observed only two things: the cars parked in the fire lane and his daughter being wheeled outside the door in a wheelchair. Her leg was in a cast. Syas stopped his car in the second lane opposite the entrance and about 12 feet from his daughter, left the car, looked toward his daughter, took

two steps, slipped and fell to the roadway, and was injured. He attempted to rise, and slipped and fell again. While on the pavement Syas saw a combination of ice and water covering an area approximately 2 feet by 2 feet. A witness who testified she had no difficulty seeing it described it as "like a wet spot . . . that didn't have a lot of water on it but it had . . . frozen over the night. I don't know if you would call that ice or if you would call it frost. . . . It was wet." While walking, Syas did not look down to see the condition of the pavement. He testified that if he had looked, he probably would have seen the ice and walked around it or proceeded with caution. He thought the area would be clean because he had been told to go there to pick up his daughter and thought there would not be any ice there.

Hospital maintenance personnel called by the plaintiff testified to inspecting the area about an hour after the accident. They saw no ice. One witness testified the area was slippery from water where vehicles had traveled through it. Vapor was observed rising from the pavement, indicating the heating coils were functioning. There was no evidence of icing under the canopy before the accident or of complaints to the hospital in that regard.

Syas contends on appeal that there were jury questions of negligence and contributory negligence.

While the trial judge directed a verdict on the basis of Syas' contributory negligence, we think the case should be disposed of on the threshold question of the hospital's negligence.

The hospital was not an insurer of the safety of business invitees on its premises. *Jeffries v. Safeway Stores, Inc.*, 176 Neb. 347, 125 N.W.2d 914 (1964). The conditions of its liability to a business visitor are spelled out in NJI 8.22. This instruction tracks Restatement (Second) of Torts § 343 (1965):

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land

if, but only if, he

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger."

Our cases are consistent. See, *Crawford v. Soennichsen*, 175 Neb. 87, 120 N.W.2d 578 (1963); *Brandert v. Scottsbluff Nat. Bank & Trust Co.*, 194 Neb. 777, 235 N.W.2d 864 (1975).

Where the facts presented to sustain an issue are such that but one conclusion can be drawn when related to the applicable law, it is the duty of the court to decide the question as a matter of law and not submit it to a jury. See *Crawford v. Soennichsen, supra.*

There are two inferences which can be drawn from the evidence. Either the heating system had malfunctioned and ice formed on the pavement or Syas slipped on water on the pavement, there because of vehicular traffic. If the first is true, there is no evidence of knowledge by the hospital of the condition or of a failure to exercise reasonable care to discover it. If the second inference is true, there is no evidence that the hospital should have expected Syas would not have discovered or realized the danger or would have failed to protect himself against it. See *Nance v. Ames Plaza, Inc.*, 177 Neb. 88, 128 N.W.2d 564 (1964). There was no issue of negligence by the hospital to submit to the jury.

Counsel for Syas has devoted a considerable portion of his brief and argument to the hospital's failure to keep open the pickup area near the entrance. We fail to see that this makes the rules in Restatement (Second) of Torts § 343 (1965) inapplicable.

AFFIRMED.

KRIVOSHA, C.J., dissenting.

I find that I must respectfully dissent from the majority's opinion in this case. I agree with the majority's conclusion that: "Where the facts presented to sustain an issue are such that but one conclusion can be drawn when related to the applicable law, it is the duty of the court to decide the question as a matter of law and not submit it to a jury." My difficulty with the majority's opinion, however, is its conclusion that the evidence in this case was such that reasonable minds could reach but one conclusion to the effect that the hospital should have expected Syas to have seen the defect and to have protected himself accordingly.

The evidence, as pointed out by the majority opinion, discloses that Syas stopped his car in the second lane opposite the entrance and about 12 feet from his daughter, left the car, looked toward his daughter, took *two steps*, slipped and fell to the roadway, and was injured. He attempted to rise, and slipped and fell again. I am unable to conclude how it can be said, as a matter of law, that the hospital could have reasonably expected that Syas would have discovered the danger. I find it not at all unreasonable to believe that Syas, concerned about the welfare of his recently injured daughter, might not have been able to discover the danger in just two steps. That is not to say that his failure to see the danger establishes negligence on the part of the hospital, but only to suggest that it created a question of fact. When different minds may reasonably draw different conclusions from the same facts as to whether they establish negligence or contributory negligence, such issues should be submitted to the jury. See, *Beck v. Trustin*, 177 Neb. 788, 131 N.W.2d 425 (1964); *Buie v. Beamsley*, 171 Neb. 181, 105 N.W.2d 738 (1960). In *Moats v. Lienemann*, 188 Neb. 452, 454, 197 N.W.2d 377, 379 (1972), we said: "'In determining the question of whether the evidence is sufficient to submit the issues of negligence and contributory negligence to the jury, a party is entitled

to have all conflicts in the evidence resolved in his favor and the benefit of every reasonable inference that may be deduced from the evidence, and if reasonable minds might draw different conclusions from a set of facts thus resolved in favor of a party, the issues of negligence and contributory negligence are for a jury.'"

I would have submitted the issues of negligence and contributory negligence to the jury. For that reason, I would have reversed and remanded.

WHITE, J., joins in this dissent.